IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GUIZAR, ) | No. C 05-0557 MMC (PR) |
| ) | |
| Plaintiff, ) | **ORDER OF PARTIAL DISMISSAL AND** |
| ) | **OF SERVICE; DIRECTING** |
| v. ) | **DEFENDANTS TO FILE DISPOSITIVE** |
| ) | **MOTION OR NOTICE THAT SUCH** |
| JENNIE WOODFORD, et al., ) | **MOTION IS NOT WARRANTED** |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Fernando Guizar, currently incarcerated at California State Prison, Corcoran, filed the above-titled pro se civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that officials at Salinas Valley State Prison ("SVSP") violated his constitutional rights in validating him as a gang member and placing him in administrative segregation ("SHU"). By separate order filed concurrently herewith, plaintiff has been granted leave to proceed in forma pauperis.

**BACKGROUND**

Plaintiff makes the following allegations in his verified complaint:

Plaintiff was formerly housed at SVSP. In February 1998, an SVSP correctional officer, defendant M. Coziahr ("Coziahr") placed him in administrative segregation pending an investigation into allegations that plaintiff was a gang member. From March to April 1998, defendants P. Tingey ("Tingey"), J. Basso ("Basso"), A. Alexander ("Alexander"), and A.

Godfrey ("Godfrey") conducted three different classification hearings and decided that plaintiff should remain in administrative segregation pending further investigation. In May 1998, defendant S.C. Wohlwend ("Wohlwend") validated plaintiff as a gang member based on allegedly inadequate and unreliable information provided by defendants Coziahr and G. Virrueta ("Virrueta"). Following plaintiff's validation as a gang member, defendants Tingey, R. Pottieger ("Pottieger"), and S. James ("James") conducted a hearing in June 1998 and determined that he should remain in administrative segregation. Thereafter, defendants G. Harris ("Harris"), Godfrey and James conducted a hearing in August 1998 and decided that plaintiff should remain in administrative segregation indefinitely. According to plaintiff, he was not allowed an opportunity to present his views at any of these hearings. In addition, he did not receive a complete "gang package," i.e., all of the documentation and information relied upon to validate him as a gang member. Plaintiff has since received several further classification hearings wherein defendant Harris has reaffirmed plaintiff's placement in administrative segregation.

Plaintiff challenged his gang validation in administrative appeals. In denying those appeals, defendants H. McEnroe ("McEnroe") and J. Marshall ("Marshall") did not disclose the sources of the information, or provide plaintiff with copies of the documents, used to establish plaintiff's gang activity.

**DISCUSSION**

**A.    Standard of Review**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See id. § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the

1  Constitution or laws of the United States was violated, and (2) that the alleged violation was
2  committed by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48
3  (1988).

**B.     Legal Claims**

Plaintiff claims that his gang validation and indefinite placement in administrative segregation violate the Due Process Clause as well as a state-created liberty interest.

Interests that are procedurally protected by the Due Process Clause may arise from two sources--the Due Process Clause itself and the laws of the states.  See Meachum v. Fano, 427 U.S. 215, 223-27 (1976).  Although the hardship associated with administrative segregation is not so severe as to violate the Due Process Clause itself, see Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir. 1986), changes in conditions of confinement may amount to a deprivation of a state-created and constitutionally protected liberty interest, provided the liberty interest in question is one of "real substance," see Sandin v. Conner, 515 U.S. 472, 477, 484-87 (1995), and, in particular, where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," see id. at 484. Indefinite placement in the SHU may amount to a deprivation of a liberty interest of real substance within the meaning of Sandin, i.e., an "atypical and significant hardship."  See Wilkinson v. Austin, 125 S. Ct. 2384, 2394-95 (2005).

When prison officials determine that a prisoner is to be segregated for administrative reasons and a liberty interest of real substance is implicated, due process requires that such officials hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons segregation is being considered, and allow the prisoner to present his views.  See Toussaint v. McCarthy, 801 F.2d at 1100; see also Wilkinson, 125 S. Ct. at 2397 (determining prisoner constitutionally entitled only to informal, non-adversary procedures prior to assignment to "supermax" facility).

Due process also requires that an evidentiary basis exist for a prison official's decision to place an inmate in segregation for administrative reasons.  See Superintendent v. Hill, 472 U.S. 445, 455 (1985); Toussaint, 801 F.2d at 1104-05.  This standard is met if there is "some

evidence" from which the conclusion of the administrative tribunal can be deduced. Id. at 1105. Additionally, it has been held that the evidence relied upon to confine an inmate to the SHU for gang affiliation must have "some indicia of reliability" to satisfy due process requirements. See Madrid v. Gomez, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995); see also Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990) (noting results of polygraph examination may not be considered "unfailingly accurate" when used as evidence to support placement in administrative segregation); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (holding evidence relied upon by prison disciplinary board must have "some indicia of reliability"). Finally, prison officials must engage in some sort of periodic review of an inmate's confinement in administrative segregation, see Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983); Toussaint, 801 F.2d at 1101, which review must amount to more than "meaningless gestures," Toussaint v. Rowland, 711 F. Supp. 536, 540 n.11 (N.D. Cal. 1989) (citing Toussaint v. McCarthy, 801 F.2d at 1102).

      Here, plaintiff alleges that he was not allowed to present his views at the classification hearings sending him to administrative segregation and validating him as a gang member. He further alleges that evidence relied upon by prison officials in validating him as a gang member and determining that he should be placed in administrative segregation indefinitely was neither sufficient nor reliable. He alleges that defendants Coziahr, Tingey, Basso, Alexander, Godfrey, Wohlwend, Virrueta, Pottieger, James, and Harris were responsible for these violations insofar as they participated in the decisions to keep him in administrative segregation. Liberally construed, such allegations state cognizable due process claims against these defendants.

      By contrast, the allegations against defendants McEnroe and Marshall pertain to their failure to provide him with the sources of information and the documentation relied upon in sending plaintiff to administrative segregation. As there is no constitutional requirement that plaintiff be provided with such documentation, his claims that McEnroe and Marshall violated his right to due process in this manner fail. Plaintiff also claims that these defendants violated his right to due process by denying his administrative grievances. There is no constitutional right to a prison administrative appeal or grievance system, however. See Ramirez v. Galaza,

4

1  334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

2  Accordingly, plaintiff's allegations against McEnroe and Marshall do not state a cognizable

3  claim for the violation of a constitutional right.

4       Plaintiff also names the current and former directors of the California Department of

5  Corrections, J. Woodford ("Woodford") and E. Alameida, Jr., ("Alameida").  He alleges that

6  they, along with defendants Harris, Tingey, Alexander and Marshall, were supervisors who

7  failed to adequately supervise and train the other defendants, resulting in the above-described

8  constitutional violations.  A supervisor may be liable under § 1983 upon a showing of (1)

9  personal involvement in the constitutional deprivation or (2) a sufficient causal connection

10  between the supervisor's wrongful conduct and the constitutional violation. See Redman v.

11  County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted).

12  Consequently, a supervisor generally "is only liable for constitutional violations of his

13  subordinates if the supervisor participated in or directed the violations, or knew of the

14  violations and failed to act to prevent them." See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.

15  1989).  Here, as noted, Marshall's alleged involvement is limited to the denial of plaintiff's

16  administrative grievances, and the failure to provide him with documentation regarding his gang

17  validation.  As these alleged actions do not rise to the level of a constitutional violation, to the

18  extent Marshall failed to supervise or prevent such conduct, such failure did not give rise to a

19  constitutional violation.  As to the remaining supervisor defendants, plaintiff's allegations of

20  inadequate training and supervision suffice to state a cognizable claim.

## CONCLUSION

22      For the foregoing reasons,

23      1.    Plaintiff's due process claims against defendants McEnroe and Marshall are

24  DISMISSED for failure to state a cognizable claim.

25      2.    The Clerk of the Court shall issue summons and the United States Marshal shall

26  serve, without prepayment of fees, a copy of the **complaint** with all attachments thereto, and a

27  copy of this order upon: **Jeannie Woodford and Edward Alameida, Jr.,** at the **California**

28  **Department of Corrections in Sacramento, California,** and upon **G. Harris, P. Tingey, A.**

5

1  **Alexander, S.C. Wohlwend, J.C. Basso, S. James, R. Pottieger, A. Godfrey, M. Coziahr,**
2  **and G. Virrueta,** at **Salinas Valley State Prison.** The Clerk shall also serve a copy of this
3  order on plaintiff and the California Attorney General's Office.
4      3.    In order to expedite the resolution of this case, the Court orders as follows:
5      a.    No later than **sixty (60) days** from the date of this order, defendants shall
6  file a motion for summary judgment or other dispositive motion.  The motion shall be
7  supported by adequate factual documentation and shall conform in all respects to Federal Rule
8  of Civil Procedure 56.
9      **Defendants are advised that summary judgment cannot be granted, nor qualified**
10 **immunity found, if material facts are in dispute.  If defendants are of the opinion that**
11 **this case cannot be resolved by summary judgment, they shall so inform the Court prior**
12 **to the date their summary judgment motion is due**.
13     All papers filed with the Court shall be promptly served on the plaintiff.
14     b.    Plaintiff's opposition to the dispositive motion shall be filed with the
15 Court and served on defendants no later than **thirty (30) days** from the date defendants'
16 motion is filed.  The Ninth Circuit has held that the following notice should be given to
17 plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact-- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted in favor of defendants, your case will be dismissed and

there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).  Plaintiff is cautioned that failure to file an opposition to defendants' motion for summary judgment may be deemed to be a consent by plaintiff to the granting of the motion, and granting of judgment against plaintiff without a trial. See Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (per curiam); Brydges v. Lewis, 18 F.3d 651, 653 (9th Cir. 1994).

      c.     Defendants shall file a reply brief no later than **fifteen (15) days** after plaintiff's opposition is filed.

      d.     The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion unless the Court so orders at a later date.

4.     All communications by the plaintiff with the Court must be served on defendants, or defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendants or defendants' counsel.

5.     It is plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court informed of any change of address and must comply with the court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

6.     Extensions of time are not favored, though reasonable extensions will be granted.  However, the party making the motion for an extension of time is not relieved from his or her duty to comply with the deadlines set by the Court merely by having made a motion for an extension of time.  The party making the motion must still meet the deadlines set by the Court until an order addressing the motion for an extension of time is received.  Any motion for an extension of time must be filed no later than 5 days prior to the deadline sought to be extended.

7

IT IS SO ORDERED.

DATED: July 26, 2005

_____
MAXINE M. CHESNEY
United States District Judge