IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FERNANDO GUIZAR, | ) | No. C 05-0557 MMC (PR) |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO PRO SE PRISONER MEDIATION PROGRAM; DIRECTING PLAINTIFF TO EFFECTUATE SERVICE UPON OR PROVIDE COURT WITH LOCATION INFORMATION FOR UNSERVED DEFENDANTS; LIFTING STAY OF DISCOVERY; INSTRUCTIONS TO CLERK** |
| v. | ) | |
| J. WOODFORD, et al., | ) | |
| Defendants. | ) | |
| _____ | ) | (Docket No. 19) |

On February 7, 2005, plaintiff, a California prisoner currently incarcerated at Corcoran State Prison ("Corcoran") and proceeding pro se, filed the above-titled civil rights complaint pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff alleges that prison officials violated his constitutional rights by placing him in administrative segregation and, eventually, the secured housing unit ("SHU") after he was validated as a gang associate. On July 26, 2005, the Court found the complaint, liberally construed, stated cognizable claims, and ordered the complaint served upon twelve defendants.[1] Now before the Court is defendants' motion for summary judgment.[2] Plaintiff has filed an opposition, to which defendants have filed a reply.

---

[1] Claims against two other defendants, J. Marshall and H. McEnroe, were dismissed for failure to state a cognizable claim for relief.

[2] The United States Marshal ("Marshal") successfully served seven defendants, who jointly filed the present motion; for the sake of simplicity, said parties are collectively referred to herein as "defendants," except where otherwise indicated. As discussed in greater detail, infra, the Marshal was not able to serve the other five defendants.

## BACKGROUND[3]

On July 18, 1996, plaintiff arrived at Salinas Valley State Prison ("SVSP"). On February 11, 1998, SVSP's Institutional Gang Investigator ("IGI"), defendant M. Coziahr ("Coziahr"), ordered plaintiff placed in administrative segregation based on evidence of plaintiff's gang affiliation and his participation in a conspiracy to assault inmates of other races. (Cattermole Decl. Ex. I at AGO-67, Ex. D at AGO-06.) On March 5, 1998, plaintiff appeared at a hearing before SVSP's Institutional Classification Committee ("ICC"), at which defendants P. Tingey ("Tingey"), J. Basso ("Basso"), and non-defendant R. Dansby decided to retain plaintiff in administrative segregation pending investigation of the evidence of plaintiff's gang affiliation and violation of prison rules. (Id., Ex. I at AGO-68, Ex. D at AGO-06.) Subsequently, on March 31, 1998, and again on April 28, 1998, plaintiff appeared at ICC hearings at which defendants A. Alexander ("Alexander"), A. Godfrey ("Godfrey"), Tingey, and Basso decided to keep plaintiff in administrative segregation pending the investigation into plaintiff's gang activities, as well as into three Rules Violation Reports ("RVRs") charging plaintiff with, respectively, "conspiracy to commit murder," "mutual combat," and participation in a "melee." (Id., Ex. D at AGO-07 - AGO-08.)

On May 5, 1998, Coziahr and defendant G. Virrueta ("Virrueta"), a staff investigator for the IGI, sent to the Law Enforcement and Institutions Unit ("LEIU") in Sacramento a "gang validation package" containing three items of evidence of plaintiff's gang membership. (Id., Ex. E at AGO-52, 26.) The three items of evidence consisted of: (1) a letter written by plaintiff to another inmate, in which plaintiff stated he had permission from the "Mexican Mafia" to assault other inmates; (2) a letter from a member of the Mexican Mafia at Pelican Bay State Prison ("PBSP"), requesting that plaintiff be placed in a leadership position with the "Border Brothers" gang; and (3) a letter from an associate of the Mexican Mafia at PBSP, indicating that plaintiff had the authority to do business with the Mexican Mafia. (Id., Ex. L at AGO-99.) On May 13, 1998, based on this evidence,

---

[3]The following facts are undisputed and are derived from the parties' exhibits.

defendant S.C. Wohlwend ("Wohlwend"), a staff member of the LEIU, validated plaintiff as an "associate" of the Mexican Mafia. (Complaint, Ex. A at 6.)

On May 27, 1998, plaintiff appeared at another ICC hearing before defendants Tingey, G. Harris ("Harris"), and certain officials not named as defendants herein, at which hearing plaintiff's stay in administrative segregation was extended pending the investigation of his gang affiliation and adjudication of the three RVRs. (Cattermole Decl., Ex. D at AGO-09.) On May 29, 1998, Coziahr received notice of plaintiff's validation as an "associate" of the Mexican Mafia. (Id., Ex. E at AGO-52.) On June 23, 1998, plaintiff appeared at another ICC hearing, at which defendants Tingey, R. Pottieger ("Pottieger"), and S. James ("James"), as well as R. Ceyzyk, an official not named herein, decided to send plaintiff to the SHU for an indeterminate term based on his validation as a gang associate.[4] (Id., Ex. D at AGO-11.) Thereafter, plaintiff was retained in administrative segregation until his transfer to the SHU at Corcoran on March 31, 1999. (Id., Ex. B at AGO-02.) Meanwhile, between July 1998 and March 1999, plaintiff appeared at periodic ICC hearings at SVSP[5] before defendants Tingey, Pottieger, James, Harris, and Godfrey as well as various ICC officials not named herein. (Id., Ex. D at AGO-11 - AGO-26.) At those hearings, plaintiff requested a copy of the gang validation package, an opportunity to refute the gang allegations and designation, and a further review by the ICC of the documents relied upon to validate him as a gang member; plaintiff's requests were denied. (Complaint at 6-7.)

On May 23, 2001, plaintiff submitted an administrative grievance at Corcoran, alleging that the evidence used to validate him as a gang member was unreliable. (Cattermole Decl., Ex. M at AGO-102.) On or about October 1, 2001, in response to that grievance at the First Level Review, defendant H. McEnroe ("McEnroe"), the Corcoran IGI, interviewed plaintiff, explained to him the nature of the evidence relied upon, answered questions plaintiff had posed, and denied the grievance. (Id., Ex. L at AGO-99.) On

---

[4]Although plaintiff was validated as an "associate" of a gang, the parties indicate no distinction between such validation and validation as a "gang member."

[5]Such hearings were held approximately once a month.

January 3, 2002, the grievance was denied at the Second Level Review by defendant J. Marshall ("Marshall"), the Chief Deputy Warden at Corcoran. (Id., Ex. L at AGO-100 - AGO-101.) On September 30, 2002, an investigator with the Corcoran IGI unit[6] received information from a confidential informant that plaintiff was participating in the trafficking of drugs in prison for the benefit of the Mexican Mafia. (Id., Ex. L at AGO-63.) This information was sent to the LEIU, and, on January 9, 2004, the information was found sufficiently reliable to support plaintiff's continued validation as a Mexican Mafia "associate."[7] (Id., Ex. E at AGO-57.) On July 16, 2004, in response to plaintiff's administrative grievance challenging the reliability of that evidence, he was interviewed at the First Level of Review by an IGI staff member,[8] who explained the evidence to plaintiff and denied the grievance. (Id., Ex. M. at AGO-105 - AGO-106.)[9]

**DISCUSSION**

A.   Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof

---

[6] Plaintiff does not name the IGI investigator as a defendant herein.

[7] Plaintiff does not name the LEIU official who made this finding as a defendant herein.

[8] Plaintiff does not name this IGI staff member as a defendant herein.

[9] Both of plaintiff's grievances subsequently were denied at higher levels of review, and no exhaustion argument is raised herein.

4

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if, as to any given fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

B.   Analysis

Plaintiff claims his placement in administrative segregation, and subsequent indefinite placement in the SHU based on his validation as a gang associate, violates a state-created liberty interest protected by due process.[10]

Interests that are procedurally protected by the Due Process Clause may arise from the

---

[10]In his complaint, plaintiff also claims a violation of "Federal Due Process." To the extent plaintiff means to claim his placement in administrative segregation violates the Due Process Clause itself, such a claim is not cognizable. See Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir. 1986) ("Toussaint I") (finding hardship associated with administrative segregation not so severe as to violate Due Process Clause itself).

laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976).  Changes in conditions of confinement may amount to a deprivation of a state-created and constitutionally-protected liberty interest, provided the liberty interest in question is one of "real substance," see Sandin v. Conner, 515 U.S. 472, 477, 484-87 (1995), and, in particular, where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," see id. at 484.  In Toussaint I, the Ninth Circuit held that California statutes and prison regulations create a liberty interest in freedom from administrative segregation, and spelled out the process due before a prisoner may be segregated for administrative reasons.  801 F.2d at 1098, 1100.  Toussaint I was decided before Sandin, however, and thus did not consider whether such liberty interest was one of "real substance," as defined in Sandin.  In Wilkinson v. Austin, 545 U.S. 209 (2005), the Supreme Court held indefinite placement in Ohio's "supermax" facility, where inmates are not eligible for parole consideration, imposes an "atypical and significant hardship within the correctional context." See id. at 223-25.  Because, in California, indefinite placement in the SHU generally renders inmates ineligible for parole consideration, it would appear that California prisoners have a liberty interest in not being placed indefinitely in the SHU.  See id. at 224-25 (recognizing harsh conditions may be necessary in light of danger posed by high-risk inmates to prison officials and other inmates, but finding such necessity "does not diminish [Supreme Court's] conclusion that the conditions give rise to a liberty interest in their avoidance").

Where the deprivation resulting from administrative segregation or indefinite placement in the SHU is one of "real substance," prison officials must provide the inmate with "'some notice of the charges against him and an opportunity to present [the inmate's] views to the prison official charged with deciding whether to transfer [the inmate] to administrative segregation.'" Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994) (quoting Toussaint I); see also Wilkinson, 545 U.S. at 228-29 (determining prisoner constitutionally entitled to informal, non-adversary procedures prior to assignment to "supermax" facility). Due process also requires that a prison official's decision to place an inmate in segregation

6

for administrative reasons be supported by "some evidence." Toussaint I, 801 F.2d at 1104-05 (citing test set forth in Superintendent v. Hill, 472 U.S. 445, 455 (1985)).

Here, defendants initially argue that ICC officials did not violate plaintiff's right to due process because the ICC is not responsible for validating plaintiff as a gang associate.[11] Defendants point out, and plaintiff does not dispute, that IGI and LEIU officials are responsible for investigating and validating gang members, whereas ICC officials are responsible only for deciding where prisoners are to be housed. The procedural protections set forth in Toussaint I, however, apply when a prison official places an inmate in administrative segregation or the SHU.[12] As defendants recognize, and the undisputed evidence indicates, ICC officials, including those named as defendants herein, were the individuals responsible for deciding plaintiff would be placed in administrative segregation and the SHU, and, as such, are liable for any failure to meet the procedural requirements of due process. The Court now addresses whether any such failure occurred based on the evidence presented herein.

In its Order of Service, the Court found plaintiff had stated a cognizable due process claim insofar as he alleged that his gang validation was not supported by "some evidence" and that he was denied the opportunity to present his views to prison officials regarding his placement in administrative segregation and the SHU. The "some evidence" standard is met if there is any evidence in the record from which the conclusion of the administrative tribunal

---

[11] The named defendants who were ICC officials at hearings resulting in plaintiff's retention in administrative segregation, and later placement in the SHU for an indefinite term, are: Harris, Tingey, Alexander, Godfrey, Basso, Pottieger, and James. The IGI/LEIU defendants involved in plaintiff's gang validation are Coziahr, Virrueta, and Wohlwend.

[12] To the extent defendants imply the ICC's decision for such placement is solely ministerial in nature, the regulations cited do not mandate such a finding. See, e.g., Cal. Code Regs. § 3378(d) (providing "an inmate housed in the general populations as a gang member or associate may be considered for review for inactive status . . . ." (emphasis added). Further, defendants' reliance on Madrid v. Gomez, 889 F.Supp. 1146 (N.D. Cal. 1995), is misplaced. In Madrid, the district court did not find the ICC is essentially required by regulation, or otherwise, to place an inmate in the SHU whenever validated as a gang member or associate. Rather, the district court found the ICC is "predisposed" to doing so, see id. at 1277, thus suggesting the ICC has the discretion to make alternative placements following validation.

7

could be deduced. See Toussaint I, 801 F.2d at 1105 (citing Hill, 472 U.S. at 455). Ascertaining whether the standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. See id. "In [their] search for some evidence," courts adhere to the Supreme Court's pronouncement that the "'evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution.'" Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987) (quoting O'Lone v. Shabazz, 482 U.S. 342, 249 (1987) (additional internal quotation and citation omitted). Here, it is undisputed that the LEIU's validation of plaintiff as a gang associate in 1998 was based on the three letters described above, specifically: a letter to another inmate from plaintiff stating plaintiff had permission from the "Mexican Mafia" to assault other inmates, a letter from a Mexican Mafia member requesting that plaintiff be made a leader with the "Border Brothers" gang, and a letter from another Mexican Mafia member stating plaintiff could "do business" with the Mexican Mafia. From these three documents, the LEIU could have deduced that plaintiff was himself an "associate" of the Mexican Mafia.[13] Accordingly, plaintiff has failed to create a genuine issue of fact that his placement in administrative segregation and the SHU was not supported by "some evidence."

By contrast, a reasonable inference could be drawn from the undisputed evidence that plaintiff was not provided with an adequate opportunity to present his views. "Due process requires that a prisoner have 'an opportunity to present his views' to the official 'charged

---

[13]Plaintiff argues there is no evidence indicating the letters have any "indicia of reliability." While the Ninth Circuit has required that evidence relied upon by prison disciplinary boards contain "some indicia of reliability," see Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987), there is no authority recognizing a corresponding need for evidentiary reliability where prison officials segregate an inmate for administrative reasons. Cf. Toussaint I, 801 F.2d at 1099-1100 (holding process due inmate placed in segregation for disciplinary reasons greater than where placement for administrative reasons). Moreover, the authority cited by plaintiff is distinguishable as it concerned information from a confidential informant. Cf. Zimmerlee, 831 F.2d at 186-87. Here, the evidence relied upon comprises intercepted correspondence from plaintiff and gang members, and in which plaintiff's involvement in gang activity was expressly discussed. Plaintiff cites no authority, and this Court is aware of none, that such letters are not sufficiently reliable to meet the "some evidence" standard.

8

with deciding whether to transfer him to administrative segregation.'" Toussaint v. McCarthy, 926 F.2d 800, 804 (9th Cir. 1990) ("Toussaint II") (quoting Hewitt v. Helms, 459 U.S. 460, 476 (1983)).  The officials "charged with deciding" whether plaintiff would be placed in administrative segregation and the SHU were defendant Coziahr, when he initially ordered plaintiff to be placed in administrative segregation on February 11, 1998, and the ICC officials present at the hearings conducted between March 5, 1998 and March 31, 1999, when they decided to retain plaintiff in administrative segregation and, based on his gang validation, to send him to the SHU indefinitely.

Defendants concede plaintiff did not have an opportunity to present his views to any of these officials.  Defendants argue, however, that any failure to provide plaintiff an opportunity to present his views was "adequately corrected" when Corcoran IGI officials interviewed plaintiff in response to his two administrative grievances at the First Level Review, in October 2001 and July 2004.

In general, violation of procedural due process rights requires only procedural correction and not a reinstatement of the substantive right.  See Raditch v. United States, 929 F.2d 478, 481 (9th Cir. 1991).  In that regard, defendants are correct that providing plaintiff with an adequate opportunity to present his views would correct the procedural due process violation that occurred.  As discussed above, however, due process requires providing an inmate with the opportunity to present his views not simply to any prison official, but rather "to the official charged with deciding whether to transfer him to administrative segregation." Toussaint II, 926 F.2d at 804 (internal quotation and citation omitted).  Here, even assuming plaintiff was given the opportunity to present his views during the interviews with the Corcoran IGI officials, there is no indication that those officials were "charged with" deciding whether plaintiff would remain in the SHU.  Indeed, as noted above, defendants state it is the ICC officials, not the IGI officials, who have the authority to determine whether an inmate is housed in the SHU.  Moreover, there is an indication in the record that the

1  Corcoran IGI officials did not have the authority to vacate plaintiff's gang validation.[14]
2  Consequently, a reasonable inference can be drawn from the evidence that the interviews of
3  plaintiff in response to his administrative grievances did not adequately correct the failure to
4  allow plaintiff to present his views to prison officials charged with ordering his placement in
5  administrative segregation and the SHU.

6  Defendants next argue they are entitled to qualified immunity, on the ground it was
7  not "clearly established" that plaintiff's constitutional rights were violated when officials
8  placed him in administrative segregation and the SHU. "The relevant, dispositive inquiry in
9  determining whether a right is clearly established for purposes of qualified immunity is
10 whether it would be clear to a reasonable state official that his conduct was unlawful in the
11 situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). As discussed above,
12 Toussaint I clearly announced in 1986, twelve years before the prison officials' actions at
13 issue herein commenced, that due process required giving an inmate an opportunity to
14 present his views to the prison official charged with deciding whether to transfer the inmate
15 to administrative segregation. See Toussaint I, 801 F.2d at 1099. Moreover, this
16 requirement was reiterated by the Ninth Circuit prior to the actions at issue herein, see, e.g,
17 Barnett, 31 F.3d at 815; Toussaint II, 926 F.2d at 804, and defendants cite no authority that
18 would have made such requirement unclear to a reasonable prison official. Consequently,
19 defendants could not have reasonably believed due process did not require their providing
20 plaintiff with an opportunity to present his views to the officials responsible for placing him
21 in administrative segregation and the SHU. Under such circumstances, defendants are not
22 entitled to qualified immunity.

23 Lastly, in its Order of Service, the Court found plaintiff stated a cognizable claim that
24 several defendants had failed to adequately train and supervise the prison officials who

---

[14] Specifically, the official who interviewed plaintiff in connection with his second administrative grievance stated that the "Corcoran IGI office does not have authority to vacate plaintiff's gang validation." (See Cattermole Decl., Ex. M at AGO-105.)

10

placed plaintiff in administrative segregation and the SHU.[15] Defendants' only argument with respect to these supervisor defendants is that they are not liable because their subordinates did not violate plaintiff's right to due process. For the reasons discussed, however, a genuine issue of fact exists as to whether the subordinate prison officials did violate plaintiff's right to due process in failing to allow him to present his views to officials who placed him in administrative segregation and the SHU.

Accordingly, none of the moving defendants is entitled to summary judgment on plaintiff's claims.

C.    Unserved Defendants

As noted above, the Marshal was unable to serve five of the twelve defendants against whom plaintiff stated a cognizable claim for relief. The unserved defendants are: Coziahr, Basso, Wohlwend, Pottieger and James.[16] As to these five defendants, the Marshal returned the summons unexecuted for the reason they were not located at SVSP, where plaintiff had indicated they could be found.

In cases wherein the plaintiff proceeds in forma pauperis, the "officers of the court shall issue and serve all process." 28 U.S.C. § 1915(d). The court must appoint the Marshal to effect service, see Fed. R. Civ. P. 4(c)(2), and the Marshal, upon order of the court, must serve the summons and the complaint, see Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994). Although a plaintiff who is incarcerated and proceeding in forma pauperis may rely on service by the Marshal, such plaintiff "may not remain silent and do nothing to effectuate such service"; rather, "[a]t a minimum, a plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent defects of which [he] has knowledge." Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987).

Here, plaintiff's complaint has been pending for over 120 days, and thus is subject to

---

[15] The supervisor defendants are J. Woodford ("Woodford") and E. S. Alameida ("Alameida"), who were directors of the CDC, as well as Harris, Tingey and Alexander.

[16] The served defendants are: Woodford, Alameida, Harris, Tingery, Alexander, Virrueta and Godfrey.

11

dismissal without prejudice as to the unserved defendants, absent a showing of "good cause." See Fed. R. Civ. P. 4(m). Because plaintiff has not provided sufficient information to allow the Marshal to locate and serve Coziahr, Basso, Wohlwend, Pottieger and James, plaintiff must remedy the situation or face dismissal of his claims against them. See Walker v. Sumner, 14 F.3d at 1421-22 (holding prisoner failed to show cause why prison official should not be dismissed under Rule 4(m) where prisoner failed to show he had provided Marshal with sufficient information to effectuate service).

Accordingly, plaintiff must either himself effect service on defendants Coziahr, Basso, Wohlwend, Pottieger and James, or provide the Court with an accurate current location such that the Marshal is able to effect such service. Plaintiff's failure to do so as ordered below will result in dismissal of the claims against said defendants pursuant to Rule 4(m).

D. Mediation Program

The court has established a Pro Se Prisoner Mediation Program under which certain prisoner civil rights cases may be referred to a neutral Magistrate Judge for mediation. In light of the denial of defendants' motion for summary judgment, and the existence of a triable issue of fact as to whether defendants violated plaintiff's right to due process by not allowing him to present his views to officials charged with placing him in administrative segregation and the SHU, the Court finds the instant matter suitable for mediation proceedings.[17] Accordingly, the instant action will be referred to a neutral Magistrate Judge for mediation under the Pro Se Prisoner Mediation Program.

**CONCLUSION**

For the foregoing reasons, the motion for summary judgment of defendants J.C. Woodford, G. Virrueta, ES Alameida, Jr., GE Harris, P.E. Tingey, A. Godfrey, and A. Alexander, is hereby DENIED.

If plaintiff fails to effectuate service on defendants Coziahr, Basso, Wohlwend,

---

[17] The Court notes that the unserved defendants and the seven served defendants are similarly situated with respect to plaintiff's claims. Under such circumstances, if the parties choose to do so, plaintiff's claims against the unserved defendants may be resolved in the mediation of the claims against the served defendants.

12

Pottieger and James, or provide the Court with an accurate current location for said defendants, within **thirty (30) days** of the date this order is filed, plaintiff's claims against said defendants will be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

Good cause appearing, the instant case is referred to Magistrate Judge Nandor Vadas for the purpose of conducting mediation proceedings pursuant to the Pro Se Prisoner Mediation Program. The proceedings shall take place within 45 days of the date this order is filed. Magistrate Judge Vadas shall coordinate a time and date for a mediation with all interested parties and/or their representatives and, within 5 days after the conclusion of such proceedings, file with the Court a report reflecting the outcome thereof.

Pursuant to the January 19, 2007 Order, the stay of discovery now in effect pending the resolution of defendants' motion for summary judgment, is hereby LIFTED.

The Clerk shall mail a copy of the court file, including a copy of this order, to Magistrate Judge Vadas in Eureka, California.

This order terminates Docket No. 19.

IT IS SO ORDERED.

DATED: March 27, 2007

_____
MAXINE M. CHESNEY
United States District Judge