IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GUIZAR, ) | No. C 05-0557 MMC (PR) |
| ) | |
| Plaintiff, ) | **ORDER GRANTING PLAINTIFF'S REQUEST FOR EXTENSION OF TIME; GRANTING DEFENDANTS' MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL; DIRECTING PLAINTIFF TO SERVE OR PROVIDE CURRENT ADDRESS FOR UNSERVED DEFENDANTS** |
| v. ) | |
| ) | |
| J. WOODFORD, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | **(Docket Nos. 48, 50, 55)** |

On February 7, 2005, plaintiff, a California prisoner currently incarcerated at Corcoran State Prison ("Corcoran") and proceeding pro se, filed the above-titled civil rights complaint pursuant to 42 U.S.C. § 1983. Now pending before the Court is defendants' motion to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, on the ground plaintiff failed to exhaust administrative remedies. Plaintiff has filed opposition to the motion and defendants have filed a reply. Also before the Court are two motions filed by plaintiff, specifically, a motion for an extension of time to file opposition to defendants' motion, and for appointment of counsel.

**PROCEDURAL BACKGROUND**

The instant action has a lengthy procedural history. As noted, plaintiff filed the action

on February 7, 2005. In his complaint, plaintiff alleges that prison officials at Salinas Valley State Prison ("SVSP"), where plaintiff was incarcerated from July 18, 1996 to March 31, 1999, violated his constitutional rights by placing him in administrative segregation and, eventually, the secured housing unit ("SHU"), after he was validated as a gang member.[1] In its Order of Partial Dismissal and Service, filed July 26, 2005, the Court found the complaint, liberally construed, stated cognizable claims, and ordered the complaint served upon twelve defendants.[2] (Docket No. 3.)

The United States Marshal successfully served seven defendants ("the served defendants"), specifically, defendants Alameida, Alexander, Godfrey, Harris, Tingey, Virrueta and Woodford, and those defendants jointly filed a motion for summary judgment. In its Order Denying Defendants' Motion for Summary Judgment, filed March 27, 2007, the Court (1) granted summary judgment on plaintiff's claim that "some evidence" did not support his placement in administrative segregation, (2) denied summary judgment on plaintiff's claim that he had been denied an adequate opportunity to present his views to the prison officials charged with deciding whether to place and retain him in administrative segregation, (3) denied summary judgment to supervisorial defendants Woodford and Alameida on plaintiff's claim that said defendants had failed to adequately train and supervise the prison officials who made the decisions to place and retain plaintiff in administrative segregation, and (3) denied qualified immunity to all defendants. (Docket No. 31.)

By that same order, the Court further provided that, within thirty days, plaintiff either must effectuate service on, or provide the Court with a current address for, the five unserved defendants, specifically, Coziahr, Basso, Wohlwend, Pottieger and James, or plaintiff's claims against those defendants would be dismissed without prejudice pursuant to Rule 4(m)

---

[1] As secured housing is a category of administrative segregation, the Court, for ease of reference, refers herein to both as "administrative segregation."

[2] Claims against two other defendants, J. Marshall and H. McEnroe, were dismissed for failure to state a cognizable claim for relief.

of the Federal Rules of Civil Procedure. Additionally, by said order, the Court referred the case to Magistrate Judge Nandor Vadas for the purpose of conducting, within forty-five days, mediation proceedings pursuant to the Pro Se Prisoner Mediation Program.

Thereafter, the served defendants filed a notice of appeal of the order denying their motion for summary judgment on grounds of qualified immunity. Following said appeal, the Court granted defendants' request to stay all proceedings pending a decision by the Ninth Circuit, and vacated the referral to the Pro Se Prisoner Mediation Project, as well as the deadline for plaintiff either to serve or provide the location of the unserved defendants.

The Ninth Circuit, in a Memorandum order filed June 11, 2008, reversed the Court's denial of qualified immunity with respect to defendant Virrueta, and the claims against Virrueta were dismissed. (Docket No. 44.) The Ninth Circuit affirmed the denial of qualified immunity with respect to defendants Alameida, Alexander, Godfrey, Harris, Tingey and Woodford, finding a triable issue of fact existed as to whether plaintiff was afforded the opportunity to present his views to the prison officials who had decided to place and retain him in administrative segregation, and the matter was remanded to this Court for further proceedings.

**DISCUSSION**

A.  Plaintiff's Pending Motions

Prior to filing his opposition to the motion to dismiss, plaintiff requested an extension of time in which to do so. Good cause appearing, plaintiff's request will be granted and plaintiff's opposition is deemed timely filed.

Additionally, plaintiff has requested the appointment of counsel to represent him in this action. Defendants have opposed plaintiff's request on the ground plaintiff has not shown exceptional circumstances warranting such appointment. The Court agrees.

There is no constitutional right to counsel in a civil case such as this. See Lassiter v. Dep't of Social Services, 452 U.S. 18, 25 (1981). Rather, pursuant to 28 U.S.C. § 1915, a district court has the power to "request" that counsel represent a litigant who is proceeding in forma pauperis. 28 U.S.C. § 1915(e)(1). The decision to request counsel to represent an

indigent litigant under § 1915 is within "the sound discretion of the trial court and is granted only in exceptional circumstances." Franklin v. Murphy, 745 F.2d 1221, 1236 (9th Cir. 1984). A finding of "exceptional circumstances" requires an evaluation of (1) the likelihood of the plaintiff's success on the merits, and (2) the plaintiff's ability to articulate his claims pro se in light of the complexity of the legal issues involved. See Agyeman v. Corrections Corp. of America, 390 F.3d 1101, 1103 (9th Cir. 2004). To date, plaintiff has been able to present his claims in more than an adequate manner and there are no exceptional circumstances warranting appointment of counsel at this time. Accordingly, plaintiff's request will be denied. Should the circumstances of the case materially change, the Court may reconsider plaintiff's request sua sponte.

B. Motion to Dismiss

Defendants move to dismiss plaintiff's claims on the ground plaintiff has failed to exhaust his administrative remedies, as is required under 42 U.S.C. § 1997(e).

1. Legal Standard

Non-exhaustion under § 1997e(a) is an affirmative defense; defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). A nonexhaustion defense should be raised in an unenumerated Rule 12(b) motion. Id. In deciding such a motion, the district court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20. If the court concludes the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the complaint without prejudice. Id. at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1175 (9th Cir. 2005) (holding when complaint includes both exhausted and unexhausted claims court should simply dismiss unexhausted claims).

2. The Exhaustion Requirement

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA") provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

4

exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and not left to the discretion of the district court. Woodford v. Ngo, 548 U.S. 81, 84 (2006). Exhaustion is a prerequisite to all prisoner lawsuits concerning prison life, whether such actions involve general conditions or particular episodes, whether they allege excessive force or some other wrong, and even if they seek relief not available in grievance proceedings, such as money damages. Porter v. Nussle, 534 U.S. 516, 524 (2002).

The State of California provides its prisoners and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, ("CCR"), § 3084.1(a).[3] In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal review, (2) first formal level appeal on a CDC 602 inmate appeal form, (3) second formal level appeal to the institution head or designee, and (4) third formal level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). See CCR § 3084.5; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a). Id. at 1237-38. At each appeal level, the inmate "must submit the appeal within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision." CCR § 3084.6(c).

The exhaustion requirement cannot be satisfied by the filing of an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford, 548 U.S. at 84. Rather, "proper exhaustion" of available administrative remedies is required. Id. at 92. The requirements of the prison's grievance process, not the PLRA, define the boundaries of proper exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

An action must be dismissed unless the prisoner first exhausted his available administrative remedies before he filed suit. McKinney v. Carey, 311 F.3d 1198, 1199 (9th

---

[3] Unless otherwise noted, all further references to code sections are to title 15 of the California Code of Regulations.

5

Cir. 2002).

3. <u>Waiver</u>

The Court first addresses plaintiff's argument that defendants have waived their non-exhaustion defense because defendants could have, but did not, raise the defense earlier in the litigation, specifically, either prior to or in conjunction with the filing of their motion for summary judgment in February 2006.

The non-exhaustion of administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense that is waived if not raised by the defendant. <u>Lira</u>, 427 F.3d at 1171; <u>see also</u> <u>Wyatt</u>, 315 F.3d at 1119 (holding defendants have burden of raising and proving absence of exhaustion). Generally, "a defendant's failure to raise an affirmative defense in his answer effects a waiver of that defense." <u>In re Adbox, Inc.</u>, 488 F.3d 836, 841 (9th Cir. 2007) (internal quotations and citations omitted). This general rule is not applicable in the instant case, however, because no answer has been filed by defendants.[4] Further, where non-exhaustion under § 1997e(a) was not available as a defense at the time the complaint was filed, the defendant may raise such defense at a later time in the litigation, provided the plaintiff is not prejudiced thereby. <u>Panaro v. City of North Las Vegas</u>, 432 F.3d 949, 952 (9th Cir. 2005). An affirmative defense is not available to a defendant at the time a complaint is filed if the controlling law at such time did not provide for such a defense. <u>See</u> <u>id.</u> at 952 & n.5.

Here, defendants argue they should be allowed to raise the exhaustion defense at this late stage in the proceedings because it was only in June 2006, in the case of <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006), that the Supreme Court clearly defined what is required for an inmate to exhaust administrative remedies. Specifically, the Supreme Court in <u>Woodford</u> clarified that prison personnel must be afforded the opportunity to correct mistakes internally by addressing prisoner grievances on the merits before being sued in federal court. <u>Id.</u> at 93.

---

[4]The filing of an answer or other responsive pleading is not a prerequisite to the filing of a motion for summary judgment. <u>See</u> Fed. Rule Civ. P. 56(b) ("A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim.").

6

Additionally, defendants argue, it was not until 2009 that the Ninth Circuit held that in order to properly exhaust administrative remedies under § 1997e(a) an inmate grievance must contain factual detail sufficient to put prison officials on notice of the specific nature of the inmate's claim. See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (holding grievance must include sufficient information "to allow prison officials to take appropriate responsive measures"). Consequently, defendants assert, it was only after they filed their motion for summary judgment in February 2006 that the law provided them with grounds to argue that plaintiff did not properly exhaust his claims because he failed to specifically argue in his prison grievances that he had not been provided the opportunity to present his views at his classification hearings.

The Court agrees with defendants' assessment of the legal landscape with respect to exhaustion at the time plaintiff filed his complaint and thereafter. Further, plaintiff has not identified any prejudice to him from defendants' delay in asserting the defense, and no prejudice is apparent from the record. Specifically, it is undisputed that plaintiff was aware of the exhaustion requirement when he filed the instant action. In particular, in the section of his form complaint designated for identification of administrative grievances or appeals, plaintiff states he appealed his claims through all three formal levels of review. (Docket No. 1 at 2.) Further, the facts regarding the administrative appeals plaintiff pursued are undisputed. Thus, with respect to the instant affirmative defense, the sole question is whether plaintiff's pursuit of those appeals served to exhaust the claims he brings against defendants herein. Plaintiff does not contend he requires further discovery in that regard, and, as discussed below, he has argued extensively in support of his position that he has satisfied the exhaustion requirement.

Based on the above, the Court concludes the exhaustion defense raised by defendants in their motion to dismiss was not available to them at the time plaintiff filed his complaint, and plaintiff has not been prejudiced by the defense first being raised at this time. Accordingly, the Court finds defendants have not waived the exhaustion defense and they may proceed with their motion to dismiss.

### 4. Analysis

On February 11, 1998, plaintiff was placed in administrative segregation at SVSP for suspected gang affiliation. He remained in administrative segregation until he was transferred to Corcoran State Prison on March 31, 1999. Starting on March 5, 1998, and continuing to March 16, 1999, plaintiff appeared numerous times before the SVSP Institutional Classification Committee ("ICC"). The ICC reviews an inmate's placement in administrative segregation. CCR § 3375(c). Plaintiff has sued defendants Alexander, Godfrey, Harris and Tingey in their capacity as prison officials at SVSP who served on the ICC and failed to provide plaintiff with the opportunity to present his views at the classification hearings. Defendants Alameida and Woodford are sued as Directors of the CDCR, allegedly responsible for supervising and training the other defendants.

Defendants argue plaintiff did not exhaust his administrative remedies as to his claim that he was not provided an opportunity to present his views to defendants at his classification hearings. Rather, defendants contend, when plaintiff was at SVSP he exhausted only one grievance all the way to the Director's level of review and such grievance did not put defendants on notice of plaintiff's claim.

Section 1997e(a) requires a prisoner-plaintiff to present his claims to each level of administrative review before raising the claims in a 42 U.S.C. § 1983 action in federal court. See Woodford, 548 U.S. at 88. "Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." Id. at 89 (internal quotation and citation omitted). Where, as in California, a prison's grievance procedures do not specify the requisite level of factual specificity required in the grievance, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Griffin, 557 F.3d at 1120 (internal quotation and citation omitted). The grievance need not include every fact necessary to prove each element of an eventual legal claim. Id. As the purpose of grievances, however, is to alert the prison to a problem and facilitate its resolution, the grievance should include sufficient information "to allow prison officials to take appropriate

8

responsive measures." Id.; see, e.g., id. (finding no exhaustion where grievance complaining of upper bunk assignment failed to allege, unlike complaint filed in court, that prison officials had disregarded nurse's order for lower bunk assignment).

In determining whether plaintiff has exhausted his administrative remedies, the Court next addresses in turn each of plaintiff's appeals.

### a. SVSP Appeal #SVSP-A-98-00482[5]

On March 3, 1998, plaintiff submitted inmate Appeal #SVSP-A-98-00482 for informal level review. ((Decl. C. Young in Supp. Mot. Dismiss ("Young Decl.") Ex. B at AGO-02.) Plaintiff described his grievance as follows:

> On or about 2/11-98 I was placed in ad-seg. for allegations of third-party correspondence. These allegations are frivolous & without merit. I was informed that I would appear before a classification commite[e] within the 10 days as described in Article 7, Sec. § 3338(a) of the Title 15, which I never received. This violates the Fifth Amendment of the Constitution.

(Id.)[6]

Additionally, plaintiff requested that the following action be taken: "To be released from ad-seg. to general population, for I was never given a fair hearing within the time-limitations, and my 'due process' was clearly violated." (Id.)

Plaintiff's appeal bypassed the informal level of review and was denied at the first formal level of review as follows:

> On April 8, 1998, you refused to be interviewed via the telephone in order to provide any additional information regarding this appeal.
>
> You were placed in Administrative Segregation on February 11, 1998. Due to an administrative error, you were not seen by the Institutional Classification Committee until March 5, 1998. A review of your CDC-114D indicates that you were placed in Ad-Seg for third party correspondence, which claims that you have contact with members/associates of a known prison gang. Based on this, you are deemed a threat to the safety and security of the institution, staff, and inmates, and you will remain in Ad-Seg pending completion of the investigation.

---

[5]The facts relevant to the exhaustion of plaintiff's administrative remedies are undisputed.

[6]The state regulation referenced by plaintiff provides that a hearing on a segregated housing order must be held within ten days of the date the inmate initially was placed in administrative segregation. CCR § 3338(a).

(Id. at AGO-04.)

On May 7, 1998, plaintiff requested a second-level review, asserting he had not been aware that an interview had been scheduled for him and also that the first-level response was an admission that an "administrative error" was the reason for the violation of plaintiff's right to due process. (Id. at AGO-05-07.)

On August 6, 1998, the second-level appeal was denied. The denial summarized plaintiff's grievance as follows: "You contend that on 2-11-98, you were placed in Administrative Segregation (Ad-Seg) and did not appear before a Classification Committee within the ten (10) days as described by the CCR." (Id. at AGO-08.) The appeal was denied on the ground that the time requirements for a hearing set out in CCR 3338(a) are directory and do not create either a right to have the specified action taken within the time limits or provide grounds for a due process violation. (Id.)

On August 21, 1998, plaintiff's appeal was accepted for Director's-level review. (Decl. N. Grannis Supp. Mot. Dismiss ("Grannis Decl.") ¶ 6 & Ex. A.) On November 6, 1998, the appeal was denied by Linda Melching ("Melching"), Chief of the Inmate Appeals Branch. Melching summarized the appeal issues as follows:

I

It is the appellant's position that he was denied appropriate due process safeguards when he was placed in Administrative Segregation (AD SEG) at Salinas Valley State Prison (SVSP) on February 11, 1998.

The appellant requests on appeal that he be released to SVSP general population housing.

II

It is staff's position that the appellant is appropriately housed in AD SEG for reasons related to institution security, and that his housing will be reviewed when an investigation pertaining to his gang affiliation is completed.

(Young Decl. Ex. B at AGO-10.)

After setting forth the pertinent regulations, Melching reached the following conclusion:

All submitted documentation and supporting arguments of the parties have been considered. The documentation and arguments presented are persuasive

10

> that the appellant fails to provide convincing proof to support his argument that he is improperly housed in SVSP AD SEG.
>
> The appellant's assignment to SVSP AD SEG is reviewed periodically by the facility ICC and by a CSR in compliance with departmental policy and governing regulations. He was last seen by ICC on October 13, 1998. At that time he was retained in AD SEG and referred to a CSR with a recommendation for a 45 day extension of his AD SEG status. His continued confinement there is based upon the decision that his placement in the general population would present a threat to institution security. This determination was made by experienced classification and custodial staff, after a thorough review of all case factors.
>
> The appellant's gang affiliation is currently under investigation. When a determination is made pertaining to this issue, he will be referred to ICC for review of his program and security needs. Following his review by ICC, he will be referred to a CSR for transfer to an appropriate CDC facility.

(Id. at AGO-12.)

Defendants argue that Appeal #SVSP-A-98-00482 did not exhaust plaintiff's instant claim that he was not provided an opportunity to present his views to the ICC members because the appeal concerned only plaintiff's assertion that he had not been provided with a timely hearing, and not any deficiency in the hearing itself. Further, defendants argue that the appeal, which was submitted by plaintiff for initial review on March 3, 1998, could not have addressed plaintiff's complaints about his ICC hearings because his first ICC hearing did not take place until March 5, 1998. Moreover, defendants assert, plaintiff does not allege that he exhausted any inmate appeal submitted after any of the ICC hearings in which he raised the issue that the ICC members denied him due process by failing to allow him to present his views.

In opposition, plaintiff argues that his exhausted appeal concerned not only the timeliness of his hearing but also the propriety of his placement in administrative segregation based on his alleged gang affiliation. In particular, plaintiff points to the Director's-level response, wherein Melching upheld the substantive reasons for plaintiff's placement and also discussed plaintiff's October 13, 1998 ICC hearing.

Having considered the arguments and evidence submitted by the parties in support of and opposition to the motion to dismiss, the Court finds Appeal #SVSP-A-98-00482 did not provide SVSP prison officials with sufficient information to put them on notice that plaintiff

11

was alleging he had not been allowed to present his views at his ICC hearings. Rather, the appeals made clear only that plaintiff objected to his initial and continued placement in administrative segregation on other grounds: the untimeliness of the hearing and unspecified "due process" violations. Consequently, in response thereto, prison officials made an effort to explain to plaintiff why his untimely hearing did not require his release from administrative segregation and, at the Director's level of review, to enumerate the reasons for his ongoing placement there. Because plaintiff's appeals did not submit for review the question whether plaintiff had been denied the right to present his views to prison officials at his classification hearings, the appeals did not "allow prison officials to take appropriate responsive measures," such as investigating plaintiff's assertions and determining whether he should be provided with a new hearing based on said procedural ground.

Based on the above, the Court concludes that plaintiff's claims against defendants Alameida, Alexander, Godfrey, Harris, Tingey and Woodford, specifically, plaintiff's claim that he was not provided an opportunity to present his views at his classification hearings, were not exhausted by way of Appeal #SVSP-A-98-00482. Accordingly, defendants' motion to dismiss the claims against said defendants will be granted.

C.  <u>Unserved Defendants</u>

Five defendants remain unserved in this action, specifically, defendants Coziahr, Basso, Wohlwend, Pottieger and James. As noted above, the Court, by order filed March 27, 2007, previously determined plaintiff's claims against these defendants were subject to dismissal under Rule 4(m) of the Federal Rules of Civil Procedure unless plaintiff, within thirty days, either himself effectuated service on them or provided the Court with their current address(es). As further noted, however, the Court subsequently vacated its order when defendants filed an interlocutory appeal with the Ninth Circuit.

The Court now reinstates its prior directive that plaintiff, in order to avoid dismissal of the unserved defendants, must ensure that they are served, by either effectuating service on them himself or providing the Court with a current address for them. Plaintiff's failure to do so as ordered below will result in dismissal of the claims without prejudice against said

1 | defendants pursuant to Rule 4(m).

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's request for an extension of time to file opposition to the motion to dismiss is hereby GRANTED. (Docket No. 55.)

2. Plaintiff's motion for appointment of counsel is hereby DENIED. (Docket No. 48.)

3. Defendants Alameida, Alexander, Godfrey, Harris, Tingey and Woodford's motion to dismiss is hereby GRANTED. (Docket No. 50.)

4. Within **thirty (30)** days of the date this order is filed, plaintiff shall either effectuate service on defendants Coziahr, Basso, Wohlwend, Pottieger and James, or provide the Court with an accurate current location for said defendants. Should plaintiff fail to do so, his claims against said defendants will be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

This order terminates Docket Nos. 48, 50 and 55.

IT IS SO ORDERED.

DATED: February 8, 2010

MAXINE M. CHESNEY
United States District Judge